### KEMPER v. WHITESIDE.

(Supreme Court, Appellate Term. April 8, 1910.)

EVIDENCE (§ 271*)—COMPETENCY—LETTERS.

 Defendant, believing that either her guardian or a stranger had diverted funds belonging to her, employed plaintiff, an attorney, to investigate; his compensation to be contingent on recovery thereof. *Held*, in an action by him against her, based on the contract and her refusal to prosecute when he discovered the wrong was committed by her guardian, the issue being merely whether their contract was that proceedings to recover the funds should be brought if it was discovered they had been diverted by either her guardian or the stranger, or only in case they had been diverted by the stranger, that a letter written by him to her, two weeks after he had reported as to the identity of the guilty person, and which was in the mail at the same time as her letter to him stating that she would not go on with the proceedings, which letter of his merely apparently corroborated him by showing that he then claimed the contract to be as on the trial he testified it was, was incompetent.

 [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068–1079, 1081–1104; Dec. Dig. § 271.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by L. Scott Kemper against Edith Whiteside. From a judgment on a verdict for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before SEABURY, LEHMAN, and GAVEGAN, JJ.

David S. Bingham (Bruce R. Duncan and Benjamin H. Newell, of counsel), for appellant.

G. R. Westerfield, for respondent.

LEHMAN, J. The plaintiff, an attorney, was employed by the defendant to investigate the facts and circumstances connected with the estate of William Laytin, deceased, in which she had an interest as legatee, with a view to taking proceedings for the recovery of certain funds to which she believed herself entitled, but had never received. The plaintiff's compensation was to be contingent upon a successful prosecution of such proceeding, but no definite percentage of a possible recovery was determined upon as his share.

It appears from the testimony that defendant believed that some person having charge of the estate of William Laytin had, during her infancy, diverted part thereof to his own use. It further appears that one of two persons was responsible for this diversion, and that she desired an investigation with a view to determine which of these persons was the responsible party. To one of these persons, who was then dead, she had been bound by close personal ties, while the other was a comparative stranger. The defendant claims that the plaintiff was employed with the distinct understanding that, if his investigation disclosed that the diversion of funds must be charged to the former, she would refuse to authorize any proceedings for a restitution, and that he would receive no compensation unless the recovery could be had against the stranger. The plaintiff claims that, although he was informed of defendant's relation to these parties, his employment was simply to determine against which one the proceedings should be brought, and contemplated such proceedings against either person against whom he could prove the wrong. He discovered that the wrong was not committed by the stranger, but by the party whose name the defendant was naturally interested in protecting, and defendant refused to bring any proceedings against his estate.

The plaintiff's testimony is uncorroborated, while the defendant's testimony as to the terms of the employment was corroborated by at least one disinterested party. Nevertheless the jury found for the plaintiff. Sworn to bring in a verdict according to the evidence and the law, and properly charged that the plaintiff had the burden of producing a preponderance of evidence, the jury must have found in the surrounding circumstances some element of corroboration, or some fact lending credibility to plaintiff's testimony sufficient to overcome the mere numerical preponderance against him. Under such circumstances, if the trial justice had erroneously admitted any written testimony apparently corroborating the plaintiff, the error may well be

regarded as presumptively prejudicial to the defendant. It seems to me that the trial justice did commit such error in the admission of the following letter:

"November 23, 1909.

"In re Estate of Wm. Laytin, Dec'd. Guardianship of Melville Boyd.

"Dear Mrs. Whiteside: Referring to my letter of the 11th instant and our several conversations over the telephone, and referring particularly to our conversation of Saturday, in which you said you would confer again with your sister on Monday (yesterday), I beg to say that I am without word from you as to the result of that conference. In view of the thorough investigation I have made, commencing last summer and just completed, I hope you will feel warranted in calling personally at my office, that I may explain in detail the situation as I explained it to Mr. McCarthy and to Mr. Whiteside. If you desire me to submit a full report in writing of my investigations since my letter to you of August 12th last, I will be pleased to do so. In any event action should be taken at the earliest possible moment. Some time will necessarily have to be taken in the preparation of the necessary papers, and for this purpose it is absolutely necessary to have a conference with you to obtain your own statement of your knowledge, or want of knowledge, of the financial transactions of your former guardian. I hope you will realize that from the beginning I entered into this matter in perfect good faith, on what I supposed was an understanding between ourselves that if it should develop in the end that you had recourse for the missing money that I should handle it for you on a contingent basis to be mutually agreeable. Without such an understanding, it would have been folly for me to have devoted all the time I did to the examination of the facts and the law applicable thereto, for I could not afford to make such an examination unless there was a chance of ultimately receiving remuneration. I write you thus plainly, so that, if I have misunderstood your intentions, you may be able to set me right.

"Yours very truly,　　　　　　　[Signed]　L. Scott Kemper.

"To Mrs. Edith Whiteside, The Alabama Apartments, New York City."

This letter was written months after the contract of employment was made, and about two weeks after the plaintiff reported as to the identity of the guilty party. It was written after the plaintiff knew that defendant was, under the circumstances, reluctant to take proceedings for restitution, though apparently the defendant had not yet finally refused to allow any legal action. It was not posted on the day of its date, but on the following day, when plaintiff was on the way to his office, where he found a letter, written by defendant's husband, which notified him that defendant would not go on with the proposed proceedings. The second letter was introduced in evidence, but is not among the exhibits. Its nature, however, is stated in the schedule of services annexed to and made part of the complaint.

Under these circumstances I cannot see how the letter written by the plaintiff was competent for any purpose. If the defendant's story is true, then it was evidently written for the purpose of making evidence; if the plaintiff's story is true, then it may have been written in good faith, but, in view of the fact that he immediately thereafter received notice of a definite refusal to proceed, concededly mailed to him before he wrote this letter, it required no further answer. Not every letter written in the course of business, before a final termination of the relations between the parties, is admissible in evidence. In the case of Gearty v. Mayor, 183 N. Y. 233, 76 N. E. 12, the admission of a letter written by an officer of the city of New York dur-

ing the course of the work, and complaining of its manner of performance, was held to constitute reversible error, because its ex parte statements were mere "self-serving declarations," and yet apparently they were not made simply with a view of creating evidence.

The rule is well established that an unanswered letter is properly admissible only where it is part of the res gestæ; i. e., where it is relevant, not merely because it rehearses past events, but because it is actually part of the transaction in issue, or where it was sent under such circumstances that an admission of some relevant fact stated therein may be implied against the recipient by his failure to answer. In this case no possible admission can be implied by the failure of the defendant to answer it, because it was written by the plaintiff after he knew of defendant's position, or just before he became apprised of it by the letter he received on November 24th. It was not part of the contract of employment, nor part of the services rendered under that employment. It was not called forth by any previous letter, and admissible to make the chain of correspondence complete. Townsend v. Felthousen, 156 N. Y. 618, 51 N. E. 279. It tends to establish no issue raised in this case. It is affirmative evidence of nothing. It merely apparently corroborates the plaintiff, by showing that before the trial he made the same declarations out of·court as he has now made in court. Such corroborative evidence is dangerous, and is to be accepted only under special circumstances, which do not exist in this case. Herrick v. Smith, 13 Hun, 446; Healy v. Healy, 32 Misc. Rep. 342, 66 N. Y. Supp. 741.

Judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.